PERKINS, Appellant, *v.* GLACIER DAIRY, Defendant.

No. 9060.

Submitted October 31, 1951. Decided January 11, 1952.

239 Pac. (2d) 531.

Messrs. Shallenberger and Paddock, Missoula, for appellant.
Messrs. Rognlien and Murray, Kalispell, for respondent.

Mr. Shallenberger and Mr. Rognlien argued orally.

MR. JUSTICE BOTTOMLY:

Action by Alvin W. Perkins against Valjean Riley and Glacier Dairy, a corporation, to recover a money judgment on an alleged oral contract. Jury having been waived, the issues were tried by the court. The eleventh judicial district court, Flathead county, Judge Dean King, rendered judgment for defendant Glacier Dairy, and plaintiff appeals. During the trial the suit was dismissed by plaintiff as to defendant Valjean Riley.

The evidence disclosed that Valjean Riley was the president and general manager of Glacier Dairy and that during the month of December 1947, plaintiff and Valjean Riley had a conversation relative to an agreement whereby plaintiff was to take over the supervision of the defendant's milk department.

Plaintiff contends that Riley told him in this conversation that if plaintiff would take over the milk department, Riley would furnish everything, lights, power, trucks, steam and the necessary things it takes to operate it, and split the net profits of the department with plaintiff, fifty-fifty; that they would operate on that basis for three months and until an audit was made showing the costs and business, then if it was too much one way or the other adjustments would be made; that under such understanding plaintiff took over the supervision of the milk room on January 1, 1948, and during the time from January 1, 1948, to March 1, 1948, the girl in the office delivered to plaintiff checks of $50 per week, to apply on his part of the profits; that about the 1st of March 1948 plaintiff went to Riley and told Riley that if the audit showing the status of the business could not be out by the 15th of the month, plaintiff would have to have a larger monthly drawing account. Riley told plaintiff he could have $300 drawing account. Plaintiff went to the girl in the office and she made out plaintiff's checks for January and February for the difference between what he had been getting and $300 per month. Plaintiff told her all he wanted was $300 a month because that is what he had agreed with Riley as a drawing account, and after the audit was out he could withhold the difference from that. Plaintiff received the $300 per month from January 1, 1948, until he quit. In December 1948 plaintiff told Riley he had an obligation to meet in the sum of $600 and plaintiff would like to get that amount against what plaintiff had coming on the profit sharing. Riley gave plaintiff a check for $700. Under the profit sharing agreement plaintiff had a balance due from defendant as of February 28, 1949, of $1,741.20.

Defendant's contentions are that defendant employed plaintiff in August 1947 on an hourly basis of $1.10 per hour; that plaintiff worked some overtime; that for the months of August to December 31, 1947, plaintiff drew hourly salary of a little over $1300; that in the month of December 1947 plaintiff and defendant had a short conversation, during which it was agreed that plaintiff was to take over the supervision of the milk room and his monthly salary would be $200; that after an audit of the departments was completed and definite costs and other matters ascertained, then some agreement would be worked out on a rental or commission basis that would be fair to both parties; that both agreed there wasn't anything they could do until definite information was obtained by an audit showing costs and other matters. No other or further understanding was ever arrived at or any definite figure set as the auditor was busy with income tax returns. This was the only time the matter of a future contract was discussed. Any other arrangement was to be worked out after the full costs and other matters had been determined. This was never done, for the reason that on or about March 1, 1948, plaintiff came to Riley before any audit of the business had been made and stated that he wanted $300 per month, and Riley told plaintiff, "All right, if you want it that way, it will be $300 a month." Riley told the girl in the office to make checks to plaintiff for the balance on the January and February payments to bring them up to $300 per month as wages from January 1, 1948, straight through. Defendant paid plaintiff $300 per month as wages from January 1, 1948, until plaintiff ceased working for Glacier Dairy in April 1949. In addition thereto plaintiff received in December 1948 from defendant a bonus of $700 for the year 1948. Defendant paid to plaintiff for the period January 1, 1948, to February 28, 1949, the sum of $4,899.90, being full payment by defendant to plaintiff for all services rendered by him. In February 1949 Valjean Riley, as manager of the Glacier Dairy, informed the employees that there was no certainty of any

456

bonus for the current year as business was getting harder and conditions getting tighter.

Thereafter plaintiff filed this suit but continued to work for defendant at the same wage until in April 1949. Plaintiff never made any further or other demand of defendant for any accounting records nor any demand for any money due nor of any other nature. The first the defendant was aware of plaintiff's demands was when defendant was served with summons in this action.

Defendant had paid a Christmas bonus to the heads of the departments at the end of each year and paid plaintiff a bonus of $700 which brought him to what the heads of the other departments received.

The transcript on appeal discloses that the defendant Glacier Dairy had profit sharing agreements with its plant managers in other cities, but these agreements, wherever they existed, had first been submitted to the board of directors of defendant for approval and reduced to writing, and made a matter of record in the minutes of the corporation. No proposed agreement or any such matter in regard to plaintiff was ever submitted to defendant's board of directors. Riley testified that as general manager of the Glacier Dairy he was paid a salary of $400 per month or $4800 per year.

The trial court had before it only the testimony of the plaintiff ▮ and that of Valjean Riley as to the controversy. Such testimony is in hopeless conflict but the weight to be given it and the resolution of the conflicts was for the trial judge and not for the appellate court.

This is an appeal in an action in law and is governed by the ▮ rules announced in Rehberg v. Greiser, 24 Mont. 487, 492, 493, 62 Pac. 820, 63 Pac. 41, 42, wherein it is said: "This court, when exercising its appellate jurisdiction, is a court for the correction of errors committed in or by the court or judge a quo. * * * What the evidence tends to prove is question of law, and hence a finding by a court of a fact which is not supported by any evidence whatever is equivalent to a decision or

ruling that there was some evidence tending to prove what is found when in truth there was none; and this also presents a question of law which, when the finding is excepted to, becomes a proper subject for review on writ of error at the common law and on appeal under the Code of Civil Procedure of Montana. * * * What evidence in substantial conflict proves—that is to say, what inference of ultimate fact is to be deduced from disputed evidentiary or probative facts—is a question of fact the final determination of which is confided to the trial court or jury, whose decision cannot be overturned by this court upon the ground that the evidence preponderated against the finding * * *.'' Compare Trenouth v. Mulroney, 124 Mont. 499, 227 Pac. (2d) 590, and cases therein cited.

The trial court found that: ''There never was an agreement ▇ made by the parties at any time that the plaintiff was to receive 50% of the profits of the milk department as remuneration for his services and that the defendant corporation has paid plaintiff the full amount of $300 per month from and after January 1, 1948, and until the services of plaintiff were terminated after the commencement of this action.'' As a conclusion of law the trial court stated that ''the plaintiff has been paid in full for any and all services rendered by him for the Glacier Dairy in accordance with the understanding and agreement of the parties and is entitled to nothing by his action.''

There is ample evidence if believed by the trial court to sustain its findings and judgment. A careful review of the record fails to reveal any prejudicial error, hence the judgment is affirmed.

MR. CHIEF JUSTICE ADAIR and ASSOCIATE JUSTICES METCALF, FREEBOURN and ANGSTMAN concur.