16

**STATE, Plaintiff, v. LAWRENCE, Defendant.**

Common Pleas Court, Miami County.

No. 8013.   Decided March 4, 1960.

James H. DeWeese, Pros. Atty., for state.
Charles B. Fox, Dayton, Bernard S. Keyt, Piqua, for defendant.

## OPINION

By PORTER, J.

Defendant is on trial on a charge of embezzlement and the most difficult question is whether or not the operator of a collection agency who pursues that as an independent business is an "agent" within the meaning of the word as used in the section which it is claimed the defendant violated, §2907.34 **R. C.**

The section, in its present form, provides as follows: "No officer, attorney at law, agent, clerk, guardian, executor, executrix, administrator, administratrix, trustee, assignee in insolvency, receiver, officer of a lodge or subordinate body of a fraternal or mutual benefit society, servant, or employee of a person, except apprentices or persons under eighteen years of age, shall embezzle or convert to his own use, fraudulently take or make away with, or secrete with intent to embezzle or convert to his own use anything of value which comes into his possession by virtue of his election, appointment, or employment thereto.

"Whoever violates this section shall be imprisoned not less than one nor more than ten years if the total value of the property embezzled in the same continuous employment or term of office, whether embezzled at one time or at different times within three years prior to the inception of the prosecution, is sixty dollars or more. If such total value is less than sixty dollars, such person shall be fined not more than three hundred dollars or imprisoned not more than ninety days, or both."

In 1839 this section only covered officers, agents, clerks and servants of persons or corporations. After the Campbell case, infra (1881) attorneys, executors, administrators, and employees were added to those originally covered. In 1902 "officers of a lodge or subordinate body" etc. were added. In 1925 the statute was amended to cover an administratrix and executrix, as well as their male counterparts, and also "receiver" was covered for the first time. In 1904 the penalty was made one to ten and not just punishment for "larceny of the thing embezzled" and, as to the value, the provision was added that the penalty depended on the value of the thing embezzled at one time or at different times in the same continuous employment.

Public officers were included for a long time until that was covered by separate sections.

The present §2907.37 R. C., took shape in laws passed in 1844. 1852, 1874. and 1881 (42 v 49, sec. 7; 50 v 132, sec 3; 71 v 66, sec. 1; 78 v 15) so that it now covers embezzlement by warehousemen, factors, or storage, forwarding or commission merchants and makes specified acts by them criminal, and also failure to pay over "after deducting compensation to which he is entitled as commission for the manufacture." It also makes criminal certain acts by consignors.

The predecessor to §2907.39 R. C., was added in 1885 (82 v 247). It covers embezzlement of property given in trust, pledge, bailment or deposit, or under an agreement to purchase it on installment payments or otherwise.

A good statement of the purpose of the first embezzlement statute is found in State v Baxter (Common Pleas Court, Franklin County, 1913) 14 ONP (NS) 223 at 228. It is as follows: "The origin and history of all statutes relating to the crime of embezzlement will shed much light upon the meaning and construction of the statute, and its language, by virtue of which the indictment in this case is framed.

"In the first place it is well understood that the common law crime of larceny left gaps through which, in the expansion of business, many wrongdoers escaped. The fact the statutory crime of embezzlement

was first enacted in England to cure these defects. followed by enactments in all of the states in this country. The American statutes followed those of England. These statutes were enacted to make penal two phases or characteristics of wrongful acts not previously made penal by common law. If a servant, officer or other trustee **steals the property of his principal,** or fraudulently or wrongfully converts the same to his own use, this is made penal by the new statutes, he being guilty of embezzlement. (Emphasis added under "the property of his principal.")

It is well known that criminal statutes should be strictly construed. In fact it is said that all doubts in the interpretation of such statutes should be resolved in favor of the accused. **State v. Conley, 147 Oh St 351 (1947).** Yet in the same case the Court said—"It is fundamental in the construction and application of statutes that not only the purpose to be served, but the object to be attained as well as the evil to be remedied should be considered" (p. 353).

In **Conrad v. State, 75 Oh St 52 Syl. 1,** it is stated: "The rule as to strict construction of penal statutes does not require the Courts to go to the extent of defeating the purpose of the statute by a severely technical application of the rule."

As to general aids to construction it is stated, "In the interpretation of ambiguous language in statutes, the intent of the law-making body should be sought in every legitimate way." **37 O. Jur. 655.** In the same text, at **page 666,** it is indirectly indicated that the observation that the reason of the law is its life, so frequently helpful in the determination of questions arising in common law, need only have a restricted application in the interpretation of statutes where the words have clear import.

With the legislative history and purpose of §2907.34 R. C., and these rules in mind, the conclusion of the Court is that the object of the statute was to punish all thefts which are not larcenies simply because the person charged did not wrongfully acquire the property stolen. The frequency with which the statute has been amended suggests to us a legislative intent to plug up all the loopholes and not, as suggested, an intent that no persons be covered unless they come within the technical definition of the categories delineated in §2937.34 R. C., and related sections.

In our mind the purpose of the statute would be defeated by letting one who is an agent in the popular sense that he is doing something for another "off the hook" just because he is an independent contractor —IF such an agent embezzled **property of another** of which he got possession as a result of his agency.

That is exactly what happened here The defendant acquired money which belonged to his principal. The state of his bank account after these collections shows that on the date that he acquired some, if not all of it, he intended to and did put it to his own use, though he may well have intended to pay his principal later Even if he did not intend to put it to his own use at the time, he did so later and this is shown by the denial that he had it, when in fact he did, long retention, and failure to pay over. We fail to see how he can avoid the application of

the statute to him by the simple expedient of comingling the funds collected with others in the usual course of business and substituting therefor his own obligation.* The money collected, over and above the commission is still the **property of another** and if he comingles it with funds of his own and applies the fund to running expenses etc. he does so at his peril.

Hence here we do not have a situation where the money collected has been comingled and even if it did our holding would be the same for reasons which will be stated later in this opinion.

A more detailed discussion of the facts is in order. One Babylon turned over a bunch of accounts to the defendant to collect. The collection was on a percentage basis and Babylon exercised no control over the manner in which the accounts were collected. Also, Babylon testified—and this was not controverted—that his understanding with the defendant was that the amounts collected were to be turned over to him as they were collected and not after all of them were paid. There were collections in 1956, '57 and '58 as set out at the top of the second page in the Bill of Particulars. Further, the defendant refused to pay over the money collected on these accounts on the demand, though he did, toward the last, say that he would account in thirty days. Time after time during this period the bank accounts of the defendant were overdrawn. There was a long retention of the money, a denial by implication that the money was collected by a writing to the effect that the accounts were being worked on and there were promises of payment (SX2). (This latter may be reconciled with the defendant's innocence but it would have been better for him if he had stated that some amounts were collected on these accounts and if he paid over the percentage at that time.)

There was no proof that the defendant was Mr. Babylon's agent in the sense that Mr. Babylon had control over him. An agent, in the usual and ordinary meaning, is one who acts for or in the place of another by authority from him. 2 O. Jur. 2d, p. 36, citing Zehr v. Wardall, 134 F 2d 805. It is true that in a technical sense an important element in determining the existence of an agency relationship is the presence of some degree of control of the conduct and activities of the proposed agent. **Haluka et al v. Baker, 66 Oh Ap 308, 312, 20 O. O. 136.**

The question is in which sense, technical or popular, did the legislature use the word "agent" in §2907.34 R. C. We have already indicated that we feel that they used it in the ordinary or popular sense in which the word "agent" is taken as meaning one who does something for and on behalf of another.

There are several leading cases on the subject under consideration. The most recent holds that under the Illinois embezzlement statute the word "agent" is used in the popular sense and includes a collection agent who pursues that as an independent employment. People v. Riggins, 8 Ill. 2d 78, 132 N. E. 2d 519, 928, 56 A. L. R. 2d 1149. An early Connecticut case reached the same result under a section covering

---

*On this there is no evidence. In fact the testimony of B that it was to be paid to him immediately after collection is not contraverted.

auctioneers, commission merchants, factors, brokers and every "agent of any private corporation * * * or private individual * * *." The Court said there was no reason for saying a narrower meaning was intended. State v. Lanyon (1910) 76 A. 1095.

The Libbey case, infra, was before this and was the basis of the statement in an earlier Connecticut case in which the Court indicated that before the statute was amended and broadened a consignee of goods on commission might be within the purview of this section—the section providing "any agent of any business house or private individual who takes etc." Thompson v. Beacon Valley Rubber Co., 56 Conn. 493, 16 A. 554.

However, according to one text, "Collection agents who follow that as an independent business cannot commit embezzlement of money so collected in the absence of a statute making them liable." 29 C. J. S., p. 692.

The cases which are cited as authority include the Stearns case, 2 Metc., Mass., 343, in which an auctioneer was held not to be an "agent." This was relied on in the Libbey case, which involved an agency which collected for newspapers, one or many. 11 Metc. 64 (Mass.), 45 Am. Dec. 185. What the Massachusetts court said there runs through other cases which follow: "We do not, however, think that the liability of the party to an act of embezzlement depends so much on that circumstance as upon the nature of the agency, AND MORE ESPECIALLY UPON THE RIGHT OF PROPERTY IN THE SPECIFIC ARTICLE EMBEZZLED. The case of a domestic servant, and, to some extent, in the case of a special agency, the right of property and the possession continue in the principal, and a disposal of the property would be a violation of the trust, and an act of embezzlement. But cases of commission merchants, auctioneers, and attorneys authorized to collect demands, stand upon a different footing; and a failure to pay over the balance due to their employers, upon their collections, will not, under the ordinary circumstances attending such agency, subject them to the heavy penalties etc." (Emphasis added.)

Thus in Commonwealth v. Hutchins (Mass., 1919), 122 N. E. 275, an agent to collect legacies was found guilty of embezzlement because he did not collect in the ordinary course of business as an agent acting for several principals, but with intent to defraud the heirs for whom he was working.

The Court also said that where an agent to collect money has a right to take for himself a part of the fund collected belonging to his principal, the mass belongs to the principal until the agent has exercised his right.

This is also true in Ohio. Campbell v. State (1878), 35 Oh St 70. But what is important to note is that these Mass. cases follow the Libbey case in holding that from the nature of certain businesses, including a collection agency, the person operating it has a right to mix monies in one fund, and to substitute his own obligation to the principals for the amounts received on their accounts. Hence, upon commingling the fund ceases to be the property of another.

This is important in evaluating that part of Campbell v. State, in

which our Supreme Court made a distinction between an agent not engaged in the business of collecting as an independent employment and one not so engaged, holding the former, when subject to his client's direction and control—an "agent."

"The controlling difference between the relation of attorneys, auctioneers, warehousemen, etc., with their employers and the defendant with his mployer, is this. The former is engaged in an independent employment subject only to the usage of their different lines of business, while the latter was subject to the direction and control of his employer and while the former may not be subject to the penalties of this statute, the latter is clearly embraced within its terms and meanings."

That may be true as to attorneys etc., but as to collection agents (who are agents in the popular sense), even tho they follow that as an independent employment, we do not think it is true. We think that what is "controlling" in their case is the legislative intent as to the meaning of the term "agent." Further, that the courts which hold they are not "agents" did so not so much because of the nature of the agency but more especially because the alleged embezzler had a right of property in the specific article alleged to have been embezzled. This right of property came from a customary right of the collector to mix monies and substitute his obligation for the monies collected. There is no proof of such a custom in this case and we doubt if there could be. Furthermore we think the legislative intent was to use "agent" in its ordinary and popular sense.

It should be observed that the question is one of difficulty. Also, some comments on the Riggins and Massachusetts cases are in order. While we agree with the result reached by the majority in the Riggins case we think they oversimplified when they said that there could be no dispute that the defendant in that case was an agent. We also think the majority left out of account the rule that criminal statutes are to be strictly construed, and that they had a misconception about the basis of earlier cases.

On the other hand the reasoning of the Missachusetts courts seems forced. This may be accounted for by the fact that they were not so far removed as we are from the days when hands were cut off (and sometimes heads too) for crimes no more serious than embezzlement.

Though the facts are different in the cases involving agency by estoppel what the Court said in the one of those cases bears repeating here. "We too often lose sight of the primary purpose of criminal statutes. They are enacted to protect the puolic by prohibiting crime and punishing criminals. If a man is agent enough to get possession of money for and in the name of his principal, he is also agent enough to be convicted of embezzlement as such." **State v. Gross, 91 Oh St 161, 164.**

As might be expected there are other questions involved, such as proof of intent and agency by estoppel. However, the only reason we wrote an opinion in the first place is to explain why we instructed ourselves, so to speak, that the operator of a collection agency who pursues that as an independent employment is an "agent" under §2907.34

R. C. Counsel did a lot of work on this question and they are entitled to know the basis of our opinion. Hence, this was written and is confined to a discussion of that point.

KIRACOFE and FAUST, JJ, concur.