[Crim. No. 4246. Second Dist., Div. Two. Oct. 20, 1948.]

THE PEOPLE, Respondent, v. E. P. FRAZIER, Appellant.

Walter C. Harbert for Appellant.

Fred N. Howser, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

WILSON, J.—Defendant was charged with grand theft in that he feloniously took $440, the property of one Charles A. Schickel. He pleaded not guilty, was tried to a jury and was found guilty as charged. His motion for a new trial was denied and he was placed on probation for three years. He has appealed from the order denying a new trial, his specified

grounds being that the evidence is insufficient to sustain the verdict and that the court committed prejudicial errors.

1. *Sufficiency of the evidence.* Defendant was engaged in the business of selling trailers and trailer parts. In July, 1947, Schickel called at defendant's sales lot with a view of selling his trailer. Defendant offered to sell it, his commission to be 10 per cent of the sale price. No price was agreed upon at that time, but defendant told Schickel his asking price of $2,600 was too low and that he should be able to obtain $2,900. Schickel asked defendant to prepare a contract for the commission but it was not drawn at that time. About a week later Schickel took his trailer to defendant's lot and parked it. When he asked defendant if the contract was ready the latter said it was not necessary because they knew each other. Orally a commission of 10 per cent was agreed upon by the parties. Schickel talked to defendant almost weekly until the latter part of September asking why the trailer had not been sold. Defendant said trailers were not selling very fast. Schickel suggested lowering the price but defendant said they would get the agreed amount when the right person came along.

On September 28, 1947, a Mr. Paelig purchased the trailer from defendant for $2,725 and gave the latter a deposit of $20. On September 29, Paelig gave defendant a check on an Illinois bank, payable to defendant, for $2,705, the balance of the purchase price. Defendant deposited the check in his bank on the same day and it was forwarded to Illinois for collection. The purchase price was designated as $2,600, with extras, sales tax, license and transfer amounting to $125, making a total of $2,725. The check was honored by the Illinois bank and the proceeds deposited in defendant's bank to his credit on October 6, 1947.

Meanwhile on September 30, the day after defendant received Paelig's check, he called on Schickel and told him he had a buyer for the trailer but the price of $2,600 was too high. He told Schickel that the best price he could obtain was $2,200, and after deducting expenses of $300, including $100 for license plates, a net of $1,900 would remain for Schickel. The latter agreed to accept that amount and executed a used trailer consignment agreement by which he agreed to accept $1,900 net and to leave the trailer with defendant for 15 days. At no time did defendant tell Schickel he had already sold the trailer or that he had received cash and a check totaling $2,725.

A few days after September 30, Schickel telephoned to defendant asking whether the trailer had been sold. The latter said he had not closed the deal at that time. The next day Schickel talked to defendant who said he had received a check for the full amount which was being cleared through a bank in Illinois. Schickel asked the name of the purchaser and defendant said the customers were queer people and Schickel should not have anything to do with them because he, defendant, did not want Schickel to jeopardize the sale. Defendant did not tell Schickel how much he had obtained for the trailer nor the amount of the check. Schickel repeatedly asked defendant about the money he was to receive. It was not until October 15 that defendant gave Schickel a check for $1,900 signed by defendant's wife. Schickel executed a bill of sale and certificate of title at that time. Schickel did not learn until a week or ten days after October 15 that the trailer had been sold on September 29.

 Since the jury by their verdict and the court by its order denying a new trial accepted the evidence above outlined as true, the conflicting evidence of defendant and his witnesses must be disregarded.

A defendant may be convicted of grand theft upon proof of facts establishing embezzlement, larceny or obtaining money by false pretenses. (*People* v. *Cook*, 10 Cal.App.2d 54, 57 [51 P.2d 169]; *People* v. *Jones*, 61 Cal.App.2d 608, 622, 623 [143 P.2d 726]; *People* v. *Myers*, 206 Cal. 480, 483 [275 P. 219].) No elements of the former crimes have been changed by section 484 of the Penal Code as amended in 1927. (*People* v. *Myers, supra.*) "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." (Pen. Code, § 503.) Every agent or other person entrusted with property for the use of any other person, who fraudulently appropriates it to any use or purpose not in the due and lawful execution of his trust, or who secretes it with a fraudulent intent to appropriate it to such use or purpose, is guilty of embezzlement. (Pen. Code, § 506.) Every agent of any person who fraudulently appropriates to his own use, any property of another which has come into his control by virtue of his employment as such agent, is guilty of embezzlement. (Pen. Code, § 508.)

 All elements of embezzlement said in *People* v. *Borchers*, 199 Cal. 52, 56 [247 P. 1084], to be necessary are present in this case: (a) Since defendant was employed by Schickel to sell the trailer and had been given possession of it with

authority to sell it and to receive payment therefor, he was Schickel's agent in holding the trailer and in receiving the proceeds of the sale. (Civ. Code, § 2026; *Soto* v. *Globe G. & M. Co.*, 55 Cal.App. 532, 534 [203 P. 830].) (b) The proceeds were the property of Schickel. As previously noted, the agreement between defendant and Schickel was that the former was to sell the trailer and to receive 10 per cent of the sale price as his commission. The trailer was sold for $2,600 (plus license fees, sales tax, etc., not involved in the case); deducting defendant's commission of $260 leaves $2,340 net proceeds belonging to Schickel; defendant paid Schickel only $1,900, which was $440 less than the amount that should have been paid. (c) Schickel owned the trailer and delivered it to defendant for the purpose of sale, hence it was rightly in defendant's possession. As a factor defendant was authorized to receive payment from the purchaser. (Civ. Code, § 2026.) When he received payment for the trailer the funds were lawfully in his possession but belonged to Schickel. (d) Defendant asserted title to and retained $440 of Schickel's money. At the time when he had deposited in his bank a check received from the purchaser for the total sale price of the trailer he represented to Schickel that he could not obtain more than $2,200 and after deducting commission and other expenses only $1,900 would remain. Although he had already sold the trailer he induced Schickel to sign an agreement consigning it to him for 15 days for sale at the net price of $1,900 to Schickel. He paid that sum to Schickel which the latter accepted, depending on the truth of defendant's false statement. Such act on defendant's part constituted conversion. (e) Defendant's intent to defraud Schickel is shown by the evidence heretofore related.

Defendant contends that the agreement of September 30 wherein Schickel agreed to accept $1,900 net for the trailer was a final and binding agreement determining the amount he was to receive. This contention is fallacious since the agreement was procured by defendant by reason of his false statement to Schickel that he, defendant, could not obtain more than $2,200 for the trailer when at that time he had sold it and had received cash and a check representing the sale price of $2,600 plus $125 expenses, and had deposited the check in his bank for collection. An agreement procured by such means binds no one. Since defendant had failed at the outset of his dealings with Schickel to prepare the commission agreement as the latter had requested, it is clear

that he procured the agreement of September 30 as a part of his scheme to defraud. The representation that the vehicle could not be sold for more than $2,200 was not concerning a future event or occurrence but was a false representation of a present fact, positively known by defendant to be untrue. Defendant had already sold it for $2,600. The evidence amply supports the verdict.

2. *Alleged errors in instructions to the jury.* Defendant complains of a part of an instruction reading as follows: "You have heard the testimony from both sides. If you find from all the evidence, beyond a reasonable doubt, that Mr. Frazier was employed as a broker to make the sale, then your verdict must be 'Guilty' . . ." He contends that this language told the jury that it is a crime to be a broker. Complaint is also made of another portion of the same instruction which reads: ". . . If, on the other hand, you find from all of the evidence, beyond a reasonable doubt, that the trailer was left with Mr. Frazier to be sold for a net price, and all the purchase money above that net price was to belong to Mr. Frazier, then your verdict must be 'Not guilty.'" Defendant's contention that this language requires him to establish his innocence beyond a reasonable doubt is without merit. The two quotations to which defendant takes exception are isolated parts of an instruction that, as a whole, states the law correctly and outlines fully and fairly the contentions of both prosecution and defense. The entire instruction reads: "The questions in this case may be summarized as follows: Mr. Frazier is charged with grand theft in that he did wilfully, unlawfully, and feloniously take $440.00 in money, lawful money of the United States, and the personal property of Mr. Schickel. The whole case revolves around, What was the contract between Mr. Schickel and Mr. Frazier? Mr. Schickel claims that he left his trailer with Mr. Frazier as his broker or agent for sale, and that Mr. Frazier was to receive 10 per cent commission on the sale for his services. Mr. Frazier admits that the trailer was left with him for sale, but he claims that the agreement was that Mr. Schickel name a net price which he would take, and that all the purchase money above that net price belonged to Mr. Frazier. You have heard the testimony from both sides. If you find from all the evidence, beyond a reasonable doubt, that Mr. Frazier was employed as a broker to make the sale, then your verdict must be 'Guilty.'

''If, on the other hand, you find from all the evidence, beyond a reasonable doubt, that the trailer was left with Mr. Frazier to be sold for a net price, and all the purchase money above that net price was to belong to Mr. Frazier, then your verdict must· be 'Not guilty.' One cannot be guilty of the theft of his own property.''

The jury was not instructed to convict if they found that defendant was a broker, nor were they told that he was required to establish his innocence beyond a reasonable doubt. The entire instruction covered the law correctly and sufficiently. There was no error. The instruction must be viewed and construed as a whole. ■ A single instruction or a portion of an instruction cannot be considered separately from the entire charge. (*People* v. *Horowitz,* 70 Cal.App.2d 675, 703 [161 P.2d 833]; *People* v. *Ames,* 61 Cal.App.2d 522, 534 [143 P.2d 92].)

In addition to the foregoing the court gave the standard instructions on the presumption of innocence; that the burden of proof was on the People as to each and every element of the offense charged, including the element of specific intent; that if they had a reasonable doubt as to whether the People had satisfactorily proved any element of the offense charged they should acquit him. These and other instructions fully protected defendant's rights. Comparable instructions were held to be sufficient in *People* v. *Bodey,* 94 Cal.App. 420, 422 [271 P. 203], where the court instructed that (1) if, from all the evidence, the jury was satisfied to a moral certainty beyond a reasonable doubt that the defendant committed a certain act he should be found guilty; (2) if from all the evidence they were satisfied to a moral certainty beyond a reasonable doubt that he did not commit the act he should be found not guilty; (3) if from all the evidence they entertained a reasonable doubt whether or not the defendant did commit the act he should be found not guilty. Considering all the instructions as a whole, there was no error and defendant's rights had full protection.

■ 3. *Alleged error in directing the order of the trial.* Defendant assigns error in that the court permitted counsel to argue the case to the jury before completing the reading of all the instructions. The court read a portion of the instructions, counsel for both sides presented their arguments, after which the remainder of the instructions were read. Subdivisions 5 and 6 of section 1093 of the Penal Code provide that counsel may argue the case and the judge may then

charge the jury. This section is not mandatory. Section 1094 provides that "... for good reasons, and in the sound discretion of the court, the order prescribed in the last section may be departed from." While the procedure adopted is unusual and is not to be commended for regular everyday practice, we do not find that the discretion of the court was abused or that defendant's rights were affected by the court's action. Departure from usual procedure is not error unless discretion has been abused. (*People* v. *Valencia*, 32 Cal.App. 631, 632 [163 P. 865].)

4. *Alleged error of the court in commenting on the evidence.* We have examined the remarks made by the court to the jury and do not find that they are outside the limits permitted by the Constitution and the statute. (Const., art. I, § 13; art. VI, § 19; Pen. Code, § 1093, subd. 6; § 1439.) The statement by the court that "the question for you to decide in this case is whether the trailer was left with Mr. Frazier as the broker of the seller or was it to be sold at a net price" was a correct statement of the issues presented by the evidence. Other remarks made by the court in connection with the instructions concerning the law were proper and not only did not exceed the constitutional privilege of the court to comment on the evidence but were helpful to the jurors in that such remarks placed in their minds the matters that they were required to consider and decide.

The order denying a new trial is affirmed.

Moore, P. J., and McComb, J., concurred.