# STATE v. ROY L. JOHNSON.

123 N. W. (2d) 183.

July 26, 1963—No. 39,092.

*Mott, Grose & Von Holtum,* for appellant.

*Walter F. Mondale,* Attorney General, and *Charles E. Houston,* Solicitor General, for respondent.

MURPHY, JUSTICE.

This is an appeal from a judgment of conviction upon which the defendant was sentenced after the jury returned a verdict of guilty of the offense of grand larceny in the second degree. The information charged the defendant with larceny by embezzlement as denounced by Minn. St. 622.01 (2).[1] The information charges—

---

[1]Section 622.01 provides: "Every person who, with intent to deprive or defraud the true owner of his property, or of the use and benefit thereof, or to appropriate the same to the use of the taker, or of any other person:

\* \* \* \* \*

"(2) Having in his possession, custody, or control as a bailee, servant, attorney, agent, clerk, trustee, or officer of any person, association, or corporation, or as a public officer, or person authorized by agreement or by competent authority to hold or take such possession, custody, or control, any money, property, evidence of debt or contract, article of value of any nature, or thing in action or possession, shall appropriate the

"* * * that on the Eighth day of November in the year A. D. 1961, at said County Roy L. Johnson, also known as, R. L. Johnson while then and there being the agent of the Heron Lake Farmers Co Operative Elevator and then and there having in his possession, custody and control as such agent, $399.00 in current money of the United States of America and he, the said Roy L. Johnson, being then and there authorized to hold such possession, custody and control for the use and benefit of said Co-operative Elevator, did willfully, wrongfully, unlawfully and feloniously, with intent, then and there had and intended by him, the said Roy L. Johnson, to deprive and defraud the true owner of its property, take, appropriate, convert and embezzle all of the aforesaid property to his, the said Roy L. Johnson, own use, said personal property of the said Heron Lake Farmers Co-operative Elevator."

The defendant claims that the relationship between him and the complainant was that of debtor and creditor and that the trial court erred in giving instructions which permitted the jury to find that the money he was charged with having wrongfully appropriated to his own use was received and held by him as the complainant's agent.

It appears that the defendant was operating a collection agency at Windom, Minnesota, under the firm name of Associated Credits. In April 1961 an associate or employee solicited from the Heron Lake Farmers Cooperative Elevator delinquent accounts for collection. The manager of the cooperative turned over seven accounts of delinquent debtors. It was agreed that the accounts would be collected on a contingent-fee basis, the collector receiving 35 percent of amounts collected under $100, 33⅓ percent of any amount collected in excess of $100, and in the event court action was necessary to enforce collection, a fee of 50 percent would be charged. At the request of the solicitor the manager of the cooperative signed a writing in the form of an authorization permitting the collection agency to institute court action. The agreement recited:

---

same to his own use, or that of any other person than the true owner or person entitled to the benefit thereof; or

\* \* \* \* \*

"Steals such property, and shall be guilty of larceny."

"In consideration of the promise of the Associated Credits to diligently process collections in my behalf, I hereby sign, transfer and set over to said association, all my right, title and interest in and to all sums of money due, or to become due upon accounts as follows: Nester Leach, Heron Lake——, Donald Cooper, Heron Lake——, R H & DeLoy Krueger, Heron Lake——, Elmer Preuss, Brewster——, Howard Teerink, Brewster——, Kenneth Clark, Dundee——, R. Steen, Windom

"That I do hereby give unto said association full authorization to ask, collect, demand, receive, receipt for, compound and acquit, and in my name or otherwise, to institute, prosecute and withdraw any action at law, or suits in equity therefore, hereby authorizing the said association to employ such attorney as it may desire to carry out the purpose of this assignment and power in either my name or otherwise. In further consideration of the promise of the association as above, we further agree that the association is hereby irrevocably vested with the power above granted and we further forever renounce our right to revoke any of said association's powers, or to appoint any person, other than the association, to execute the same, and forever renounce all rights on my part personally to do any of the actions which the association is hereby authorized to perform."

The defendant's agent testified as to the purpose to be served by the foregoing authorization as follows:

"They would say, 'Why do you need it?' And I would tell them that my understanding of it was that in the event that we had two or three accounts on one individual, in order for us to sue it out under our name, rather than each individual, we could do this only if we had the assignment. And again it was something that I didn't insist that they sign, because some signed it and some didn't, and not all signed it."

It further appears from the record that as a result of the efforts of defendant's organization, three of the delinquent accounts were paid directly to the cooperative. In November 1961, the defendant collected the sum of $399 from one Nester Leach. In October 1961, he collected the sum of $369.46 from a Howard Teerink, and $441.31 from a Kenneth Clark. He agrees that after allowing for credit of the collection

fee on accounts paid directly to the cooperative, he is indebted to the cooperative in the approximate sum of $600. The information charges the defendant only with larceny of the amount held back from the cooperative on the Leach account.

The record indicates that after these accounts were collected, the manager of the cooperative made several telephone calls to the defendant requesting a remittance. The defendant ignored the requests and demands of the cooperative. It appears from the record that the defendant conducted his business in an indifferent manner. He did not follow the advice and suggestions of his office help in keeping his accounts and making remittances to his principals. The collections received would be deposited in a bank account and withdrawals made from such deposits for business and personal expenses. His employee testified:

"Well, let's say we had a disagreement as to the disposition of funds that we had in the Associated Credits account, of the spending of it. There were several occasions on which money was spent that I said we shouldn't spend it, and this was a continual thing, we argued about it all the time. Number one was flying an airplane. He [the defendant] had a compulsion every so often to want to go to Springfield and fly an airplane, and I argued with him the first few months about each and every time that he would go there, and all we argued about was when he was going to fly to Sioux Falls, or collect a hundred dollar account, or fly down to Tennessee and pick up a friend of his and try to collect an account on the way."

It is unnecessary to go into the details of the operation of the defendant's business. It is sufficient to say that the money collected on accounts was used for personal and business expenses and no remittances were made to the cooperative. It may also be observed that the final entry in the defendant's bank account showed an overdraft.

The defendant does not deny that he has failed to remit the amounts collected. He contends that by the writing of April 19, 1961, he purchased the accounts in question; that his relation with the company is that of creditor and debtor; and that he was not their agent. His theory of defense is that the writing of April 19 is an assignment within the

meaning of Minn. St. c. 521. At the trial he took the position that he had control over the accounts receivable as owner of them; that he collected from the debtors by any means he chose; and that the time and method of collecting the accounts was entirely within his discretion. By his brief he argues "that according to the assignment agreement, he had no obligation to make payment to cooperative elevator until he had collected every penny in accounts receivable assigned to him, that he had a right to use money collected as his own, after collecting the same, that his obligation to cooperative elevator was to pay them the amount owed after collections were completed."

The argument that the writing of April 19, 1961, is an assignment within the meaning of c. 521 may be summarily disposed of by observing that that chapter generally deals with the subject of financing through the sale or pledge of accounts receivable and is designed to protect the rights and liabilities of assignors, assignees, and debtors in connection with the transfer of contracts and receivables specifically defined in § 521.01, subd. 2. The "assignment" referred to in c. 521 is defined in subd. 3 as "a transfer upon a sale or pledge of an account or any part thereof." The trial court was correct in determining that the evidence here did not establish such a transaction; he was correct in his view that the writing of April 19 was not a sale or transfer of the accounts to the defendant, but was given to him only for the purpose of facilitating collection.

The defendant further argues, on authority of State v. Kent, 22 Minn. 41, that an agent who receives money for his principal, out of which he is entitled to retain commissions, may not be guilty of larceny by embezzlement in converting the whole to his own use since in such case he is a joint owner of the funds collected. The Kent case involved a charge against one who collected pew rents for a church corporation under an express agreement by which he was to be compensated on a percentage basis. We are no longer bound by that decision because of the enactment of Minn. St. 622.02, which specifically deprives the defendant of the defense that he is a part owner of the money fraudulently appropriated to his own use. State v. MacGregor, 202 Minn. 579, 279 N. W. 372. Section 622.02 provides:

"It shall be no defense to a prosecution under section 622.01, clause (2), that the accused was entitled to a commission, out of the money or property appropriated, as compensation for collecting or receiving the same for or on behalf of the owner thereof, or that the money or property appropriated was partly the property of another and partly the property of the party accused; but it shall not be larceny for any bailee, servant, attorney, agent, clerk, trustee, or any other person mentioned in section 622.01, clause (2), to retain his reasonable collection fee or charges."

The authorities relating to the subject of larceny by embezzlement of a collector or collection agency working on a commission or percentage, gathered in Annotation, 56 A. L. R. (2d) 1156, support the general rule that although an agent who collects money for his principal is entitled to commissions out of the funds collected that fact does not give him such ownership in the money as to absolve him of a charge of larceny by embezzlement if he converts the entire fund to his own use.

The trial court properly instructed the jury with reference to the essential elements of the offense. We are satisfied from the record that the money collected by the defendant over and above his commission was still the property of the cooperative, and the fact that he commingled it with his own funds, intentionally appropriated it to his own use, and failed to account for it, substantiated the offense of larceny as defined by the statute.

The defendant as an indigent was represented by court-appointed counsel. It appears that the appeal was taken in good faith and upon reasonable grounds. The attorney for the defendant is accordingly entitled to an attorney's fee of $250 for his services together with such costs and disbursements as he may have incurred in connection with the appeal. It is therefore ordered pursuant to Minn. St. 611.07, subd. 2, that the county reimburse said counsel for attorney's fees in the amount indicated and such additional costs and disbursements as may be certified to the county treasurer by the clerk of this court.

Affirmed.