450 P.2d 79

The STATE of Idaho, Plaintiff-Respondent,

v.

Bobby Jo COMPTON, Defendant-Appellant.

No. 10134.

Supreme Court of Idaho.

Jan. 27, 1969.

Rehearing Denied Feb. 24, 1969.

McClenahan & Greenfield, Boise, for appellant.

Allan G. Shepard, Atty. Gen., and Roger B. Wright, Deputy Atty. Gen., Boise, for appellee.

TAYLOR, Justice.

Defendant (appellant) Compton was charged with, convicted of, and adjudged guilty of, the crime of embezzlement. Defendant presented seven assignments of error, all of which raise the ultimate issue of whether the evidence supported the jury verdict of guilt of the particular crime charged in the information.

Embezzlement is defined as "the fraudulent appropriation of property by a person to whom it has been intrusted." I.C. § 18–2401. The state apparently, though not specifically, elected to charge defendant under the particular statute, I.C. § 18–2405:

> "Every clerk, agent or servant of any person who fraudulently appropriates to his own use, or secretes with a fraudulent intent to appropriate to his own use, any property of another which has come into his control or care by virtue of his employment as such clerk, agent, or servant, is guilty of embezzlement." [1]

The property appropriated was money belonging to the Trimble Oil Company.

---

1. The record does not indicate why the prosecution proceeded under I.C. § 18–2405, rather than § 18–2407.

It was agreed orally between defendant and a representative of the oil company, Mr. Trimble, that defendant was to be in charge of the oil company's gasoline station located at 1310 Capitol Boulevard in Boise. The arrangement lasted from October 15th to October 30th, 1966, when Mr. Trimble ousted defendant and locked the station.

The oral arrangement between Compton and the Trimble Oil Company as to the receipt of and payment for gasoline was as follows. The company would deliver gasoline to underground tanks at the station. The ownership of this gasoline never passed to Compton but rather remained in the Trimble Oil Company until it passed to individual customers as the gasoline was pumped into their cars. Risk of loss of the gasoline was upon the oil company, and Compton was not obliged by contract to pay the oil company for gasoline delivered to the underground tanks but not sold. Thus the gasoline itself was entrusted to Compton's care, and Compton's duty was to collect payment for it from individual customers. There is no contention by the state that Compton did not collect the payments for gas sold to customers.

As to the cash or credit card invoices received from customers, Mr. Trimble testified that Compton was to take an aggregate total meter reading at the beginning and end of each day. The difference between these readings would equal the total amount of gasoline sold during that day stated in money or gallons. From this total, Compton was to deduct the aggregate wholesale cost of the gasoline, which would then be payable to the Trimble Oil Company. He also was to deduct one cent per gallon as rent payable to Trimble Oil Company for the station. The remainder, which varied according to the retail price of the gasoline sold, was Compton's commission.

As to the wholesale cost plus rent, Compton was supposed to make a daily deposit of cash in a local bank to an account of the Trimble Oil Company, remitting the deposit receipts plus credit card invoices to Trimble Oil Company by mail.

Apparently the master-servant relationship did not exist between the oil company and the defendant. The true relationship was twofold, that is (1) Compton was the lessee and the oil company the lessor of the gas station; rental was fixed at the rate of 1¢ per gallon of gas sold; (2) Compton, as an *independent contractor* was consigned gasoline belonging to the oil company. This he was to sell on behalf of the oil company and turn over daily the credit card invoices, and a specified portion of the proceeds by depositing same to the company's account in a local bank (including 1¢ per gallon of gas sold as rent) and retain the remainder of the sales proceeds as his commission.

The lessor-lessee relationship does not concern or affect the embezzlement. The property embezzled was the cash sales proceeds (over and above the rental and commission) which defendant agreed to deposit daily to the oil company's bank account, but which he did not so deposit.

The American Law Institute's Restatement (Second) of Agency defines the terms Agency, Principal, Agent, and Independent Contractor thusly:

> "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act.
>
> "The one for whom action is to be taken is the principal.
>
> "The one who is to act is the agent.
>
> \*　　\*　　\*　　\*　　\*　　\*
>
> "An independent contractor is a person who contracts with another to do something for him but who is not controlled by the other nor subject to the other's right to control with respect to his physical conduct in the performance of the undertaking. *He may or may not be an agent.*" (Emphasis supplied.) Restatement (Second) of Agency, §§ 1, 2(3) (1958).

The Restatement also compares Agent and Independent Contractor:

"One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." Restatement (Second) of Agency, § 14 N.

Comment "*a*" to § 14 N, is especially relevant to the issues at hand:

"*Independent contractor as agent.* As stated in Section 2, 'independent contractor' is a term which is antithetical to the word 'servant', although not to the word 'agent'. In fact, most of the persons known as agents, that is, brokers, factors, attorneys, collection agencies, and *selling agencies are independent contractors* as the term is used in the Restatement of this Subject, since they are contractors but, although employed to perform services, are not subject to the control or right to control of the principal with respect to their physical conduct in the performance of the services. *However, they fall within the category of agents.* They are fiduciaries; they owe to the principal the basic obligations of agency: loyalty and obedience. Some of them also fall within the category of trustees, as in the case of a selling agent who has been given title to the subject matter. Colloquial use of the term excludes independent contractor from the category of agent as a similar use excludes trustee, but in both cases there is an agency if in the transaction which they undertake they act for the benefit of another and subject to his control. Thus, salesmen as a group are divided into servants and non-servants, the latter falling into the class of independent contractors for the purpose of distinguishing them from others for whose physical conduct in the scope of employment the employer is responsible." (Emphasis supplied.)

Two fairly recent cases have held that one who collects money from a "debtor" of another (the "creditor") on behalf of that other person is an "agent" of the other person within the meaning of the embezzlement statute, despite the fact that in the technical sense the alleged embezzler is an independent contractor over whom the other person (i. e., the "creditor") has only minimal or no control. State v. Holdren, 143 Mont. 103, 387 P.2d 446 (1963); State v. Lawrence, 168 N.E.2d 21, 84 Ohio Law Abst. 16, 13 Ohio Op.2d 195 (Ohio Com.Pl. 1960); see also State v. Cochrane, 51 Idaho 521, 6 P.2d 489 (1931).

"The fact that an agent who collects money for his principal is entitled to commissions out of the funds collected does not give him such ownership in the money as to absolve him of a charge of embezzlement, if he converts the entire fund to his own use. The right to receive commission does not constitute joint ownership, since all over his commission he holds in trust for his principal." Sherman v. State, 234 Miss. 775, 108 So.2d 205 (1959); accord, Dickens v. State, 398 P.2d 1008 (Alaska 1965); State v. Johnson, 266 Minn. 187, 123 N.W.2d 183 (1963).

■■■ It has been said that a debtor-creditor relationship, not being fiduciary in nature, does not support criminal liability under the embezzlement statutes. See State v. White, 46 Idaho 124, 266 P. 415 (1928). *This does not mean that the existence of the debtor-creditor relationship is a defense to a charge of embezzlement.* It means rather that a mere debtor-creditor relationship coupled with failure to repay does not in itself establish the commission of the crime. In the case before us the fiduciary relationship existed by reason of the agency. Since the sale of the gasoline transferred title from the oil company directly to consumer and not from oil company to defendant to consumer, defendant was not indebted to the oil company for the price of the gasoline, but was the holder of part of the proceeds of the sale as agent for the oil company. The debt was created thereafter by the conversion by defendant of the money of the oil company. By the act of embezzlement, the embezzler becomes the debtor of his victim. The fact that by

reason of the embezzlement a civil right of action accrued to the oil company against defendant for recovery of the money converted was immaterial to the issue of embezzlement. Likewise, the testimony of Mr. Trimble that the company would have accepted other money, and that defendant need not have sent the specific money to them or to the company, in satisfaction of the company's claim, was immaterial to the issue of embezzlement. The victim of a crime does not have a right to control the state's criminal action, nor to compromise or settle it in or out of court.

■ Compton was entrusted with the oil company's gasoline for the purpose of sale. It was his duty to collect from the purchasers the money due therefor, and to turn over to the oil company the portion of the proceeds belonging to it. Under the statute and under the authorities cited, Compton was guilty of embezzling proceeds entrusted to his care which belonged to the oil company. See People v. Frazier, 88 Cal.App.2d 99, 198 P.2d 325 (Dist.Ct. App.1948). A confidential, fiduciary relationship existed between defendant and the oil company in relation to the collection and depositing to the company's account of the company's portion of the sales proceeds. Defendant was the company's trusted agent for that purpose.

"A fiduciary relationship does not depend upon some technical relation created by or defined in law, but it exists in cases where there has been a special confidence imposed in another who, in equity and good conscience, is bound to act in good faith and with due regard to the interest of one reposing the confidence. * * *

"* * *; it exists whether the relationship is technically fiduciary or merely informal, whenever one trusts in and relies on the other." Stearns v. Williams, 72 Idaho 276, 288, 240 P.2d 833, 840 (1952).

Appellant cites Kelley v. People, 157 Colo. 417, 402 P.2d 934 (1965), in support of his contention that the evidence did not support the jury verdict. The facts therein are similar to those in this case. Nevertheless, the following statement in the Kelley case should be noted:

"The Attorney General, while briefing with particularity the law applicable here, points out that he does not disagree with the defendant's position and that it is his conclusion that the People failed to prove that the defendant unlawfully converted money belonging to the Hill Oil Company."

The Colorado court apparently did not consider the authorities cited herein. While it is true that well reasoned argument can and sometimes should overcome mere case law, nevertheless the inference is irresistible that the Colorado court was persuaded not so much by right reason as by the fact that both sides on appeal agreed that defendant was not guilty of the crime charged.

Judgment affirmed.

SMITH, C. J., and McFADDEN, J., concur. Decision reached before retirement of SMITH, C. J., and TAYLOR, J.

McQUADE, J., dissenting.

SPEAR, J., concurring in the dissent.

McQUADE, Justice (dissenting).

The majority opinion affirms the conviction of the crime of embezzlement despite the fact that the State failed to prove all of the essential elements of that crime. The information charged appellant with the crime of embezzling cash. It was therefore necessary that the State prove beyond a reasonable doubt that appellant had some fiduciary obligation with respect to the cash received from the sale of gasoline.[1] If such a fiduciary obligation exist-

1. State v. White, 46 Idaho 124 at 131–133, 266 P. 415 at 417–418 (1928) ; People v. Kagan, 70 Cal.Rptr. 732 at 740 (Cal.App.

1968) ; People v. Parker, 235 Cal.App.2d 100, 44 Cal.Rptr. 909 at 914 (1965) ; Mavrikis v. State, 110 Ga.App. 26, 137

ed at all, it must be found from the *facts* constituting the relationship between the Trimble Oil Company and appellant.

The State asserted, and the majority opinion concludes without analysis of the facts constituting that relationship, that appellant was an agent of the Trimble Oil Company with respect to the cash. Yet upon analysis of the only evidence adduced at trial concerning the "oral arrangement" between the Trimble Oil Company and appellant, all of which evidence consisted of the testimony of Mr. Trimble, the very individual who created the relationship, it appears that appellant had no obligation whatsoever to deposit specific funds in the Trimble Oil Company account. Mr. Trimble testified on cross-examination as follows:

"Q Now, to make certain as the customer paid him for the gas, paid Mr. Compton, was he obligated to send all of that money to you?

"A You mean from the customer, no he would deduct his commission.

"Q He was authorized to deduct his commission. As he operated the station, how he operated the till was of no concern to you, is this correct. You didn't expect him to send you the specific money the customer gave him on over to you, is this correct?

"A No, he didn't have to.

"Q If, a customer came in and he made a sale during the day and there was money in the till, Mr. Compton, could

do as he pleased with this money, is this correct?

"A Over and above what he sends to us.

"Q Well, he owed you, he was suppose to pay you, but you didn't care how he got the money, is this correct?

"A No.

"Q If he had gotten the money from his father, or other sources and sent it [to] you we would not be here today would we?

"A Apparently not.

"Q What I am getting at is, that he was not under any obligation to send this specific money that the customer gave him to you?

"A That's correct."

The conclusion that appellant had no obligation to deposit specific funds is plainly one of *fact*. The existence of such an obligation as a *factual* component of the relationship is essential to the conclusion of *law* that appellant had some fiduciary obligation with respect to the cash he is charged with embezzling.[2] The existence of a *legal* fiduciary obligation is in turn essential to the further conclusion of *law* that appellant was an agent with regard to the cash.[3]

The duty of this Court is to apply the law to facts as they exist in the record. The majority opinion ignores the uncontrovertible fact established by the testimony in this case that appellant had no duty as part of his relationship to the Trim-

---

S.E.2d 730 at 733 (1964); State v. Waters, 302 S.W.2d 34 at 37 (Mo.1957); Colella v. United States, 360 F.2d 792 at 799 (1st Cir. 1966).

2. Embezzlement is a criminal breach of trust, but not every breach of trust is embezzlement, for not all breaches of trust involve duties with respect to specific property. In the present case, the fact that appellant could have commingled cash received from customers with his own funds shows that appellant had the power under the terms of his relation to the oil company to substitute his personal debt for specific property. The existence of

some duty toward specific property is necessary to limit and define the scope of all fiduciary obligations. "A person in a fiduciary relation to another is under a duty to act for the benefit of the other as to matters within the scope of the relation," Restatement (Second) of Trusts § 2, comment b (1957). The "scope of the relation" is a question of fact, namely, with respect to what property are duties owed. See also Scott, Abridgment of the Law of Trusts § 2.6 (1960).

3. Restatement (Second) of Agency §§ 1(1) and 13 (1957).

ble Oil Company to deposit specific funds. The majority opinion dismisses this testimony as incompetent in that, it is said, parties may not be permitted artificially to agree among themselves what is or is not an agency relationship. This line of reasoning is specious, for it ignores the distinction between questions of fact and conclusions of law based upon specific facts. Whether a statement constitutes a conclusion of law or a conclusion of fact depends upon its relationship to the legal issues involved.

In the present case, the legal issue is whether or not appellant was an agent of the Trimble Oil Company in relation to the cash received from customers. This question of law subsumes the subordinate issue as to whether or not appellant had any fiduciary obligation with respect to the cash. In relation to these two issues, the statement by Mr. Trimble that appellant had no duty to deposit specific funds is one of fact. As a principal Mr. Trimble was competent to make that statement of fact, and this Court cannot remove it from the record by calling it a conclusion of law. Of course, it is hornbook law that when an agency exists it does so irrespective of the label parties may apply to it, but there nonetheless must always be a residual foundation of facts to support the conclusion of law that an agency does exist.[4] In this case, the duty to deposit specific funds is one of those residual facts. Without that fact there can be no fiduciary obligation, and without a fiduciary obligation there can be no agency. Without an agency there can be no crime of embezzlement in this case.

The proper characterization of the relationship between appellant and the Trimble Oil Company with respect to the cash received from customers is that of debtor and creditor. Upon the sale of gasoline, appellant incurred a debt to the oil company in the amount of its wholesale cost and one cent per gallon of gasoline sold as rental. The arrangement for the deposit of cash from any source in the Trimble Oil account was simply the means Mr. Trimble chose for the prompt payment of that debt. The failure of a debtor to pay his creditor the amounts due in the precise manner and at the precise times prescribed by the creditor does not constitute the crime of embezzlement. The creditor has civil remedies for such defaults. Under the reasoning of the majority, however, a failure by a consignee to pay his consignor the cost of goods sold in the manner prescribed by the consignor would constitute a crime, for that relationship could often be legally identical to the relationship in this case between appellant and Trimble Oil Company.[5]

The majority rely upon a number of cases[6] in an effort to characterize appellant as an agent for embezzlement purposes. It should be noted that five of these cases dealt with persons engaged in the business of soliciting and collecting accounts receivable and the sixth dealt with an attorney hired to collect an account receivable. In the *Holdren* and *Lawrence* cases, the respective courts acknowledged that the respective defendants were not agents in the strict legal sense but then went on to find agency in the "popular" sense. In fact, the *Lawrence* Court stated

4. Restatement (Second) of Agency § 1(1), comment b: "Agency is a legal concept which depends upon the existence of required factual elements * * *. To constitute the relation there must be an agreement * * * between the parties; if the agreement results in the factual relation between them to which are attached the legal consequence of agency, an agency exists * * *;" cf. Bogert, Trusts and Trustees § 22 (1965).

5. See Restatement (Second) of Agency § 14 J (1957).

6. State v. Holdren, 143 Mont. 103, 387 P.2d 446 (1963); State v. Lawrence, Ohio Com.Pl., 13 Ohio Op.2d 195, 168 N.E.2d 21 (1960); State v. Cochrane, 51 Idaho 521, 6 P.2d 489 (1931); Sherman v. State, 234 Miss. 775, 108 So.2d 205 (1959); Dickens v. State, 398 P.2d 1008 (Alaska 1965); State v. Johnson, 266 Minn. 187, 123 N.W.2d 183 (1963).

that the defendant could "substitute his obligation for the monies collected." [7] The Courts went on nonetheless to find an agency in order to remedy what the Montana Court characterized as a "vicious evil." [8] This type of construction of criminal statutes appears unwise.

Moreover, the basic distinction between all of the collection agency cases and the case at bar is that the entire purpose of the collection business is to collect money owed on accounts receivable with which the collector had no previous contact. Appellant, on the other hand, was set up by the Trimble Oil Company as an independent manager of the gasoline station. With an eye upon the law of taxation and torts, the oil company expressly disclaimed that appellant was their employee. He was an independent lessee of the station premises; he could hire and fire his own employees at will; he could sell gasoline at any price he chose so long as the oil company was paid its wholesale cost; he could commingle cash sales receipts with his own funds and could even have paid his own helpers out of those receipts. This degree of independence is inconsistent with the assertion of an agency relation with respect to the cash, and it appears that the existence of agency or not is to turn upon convenience of the oil company.

Far more pertinent is the case of Kelley v. People.[9] The Colorado Supreme Court's review of the evidence disclosed that "Kelley was not an employee for the collection of funds nor was he obligated to segregate and hold in trust specific funds for the Company * * *." There

"H. B. Hill, the controlling partner of the [oil] Company, testified that he did not care where Kelley's payments [for gasoline] came from, and that he was not concerned with the source of the payments. He made no requirement that receipts from the sale of the gasoline be set aside and held in trust for the Company. His only concern was that he be paid the wholesale price of the gasoline sold."

Moreover, "Mr. Hill testified that Kelley could sell the gasoline at any price he wished, as long as the Company was paid the wholesale price from some source." [10]

On this state of the record, the Colorado Court concluded as follows:

" * * * The evidence conclusively establishes that the money received by Kelley in the operation of the station was not the property of the Company, nor was Kelley acting as the agent of the Company when he received the money for the sale of the gasoline. No money collected by Kelley in the operation of the station became the Company's property until it was actually transferred to the Company by Kelley in payment of his obligation. The arrangement between Kelley and the Company was clearly such that the relationship between them was that of debtor and creditor." [11]

Thus, the embezzlement conviction was reversed.

The majority purports to avoid the thrust of this case by pointing out that the Colorado attorney general did not disagree with Kelley's position. Notwithstanding that lack of disagreement, the *Kelley* decision is a well-reasoned analysis of the nature of the relationship between the oil company and the gasoline station manager with respect to cash sales receipts. That relationship was nearly identical to the relationship in the case at bar. For that reason, and precisely because the attorney general could not disagree, the *Kelley* decision is more persuasive than those cases relied upon by the majority. Indeed, the State in the present case failed both in its brief and oral argument to suggest a single

7. Lawrence, note 6, supra, 168 N.E.2d at 26.

8. Holdren, note 6, supra, 387 P.2d at 450.

9. 157 Colo. 417, 402 P.2d 934 (1965).

10. Id. at 935.

11. Id.

ground of distinction between the *Kelley* case and the case at bar.

Furthermore, the *Kelley* Court relied upon Cottrell v. Grand Union Tea Company,[12] in which a relationship between a corporation and its salesman was analyzed and found to be a debtor-creditor relationship rather than a principal-agent relationship with respect to cash collected by the salesman. The salesman deducted his own commission and expenses from the receipts; he deposited the funds in his own bank account and remitted amounts owed the company by personal check. Thus, the Court concluded:

"It seems clear that under the plan of operation actually followed, so long as the company received what it had coming, it was not concerned with the identity of the money, and that the salesman was thus the debtor and the company the creditor, nothing more. * * *. [Thus] embezzlement would not lie." [13]

Significantly enough, the Utah Court cited the Idaho case of State v. White [14] as authority for this conclusion. The jury verdict against the employer for malicious prosecution was reinstated.

For these reasons, appellant's conviction should be reversed.

SPEAR, J., concurred.

12. 5 Utah 2d 187, 299 P.2d 622 (1956).

13. Id. at 625.

14. N. 1, supra.